52 Cloer v. Department of Health and Human Services Ms. Bush, we are ready to hear from you. May it please the Court, my name is Mary Bush and I represent the petitioner Dr. Melissa Cloer in this claim brought under the National Vaccine Injury Compensation Program. I think it's particularly timely that we are looking at the application of the time provisions of the Vaccine Act now given what's going on from a public policy standpoint in the United States. It's our position that the time deadlines as applied by the courts below to Dr. Cloer's claim were inappropriate. The courts below improperly followed the direction set forth in the Markovich decision and also failed to take into account the statutory provisions as a whole of the Vaccine Act. I think that the Court's analysis, Your Honor, failed to address what was known or recognized by the medical community at large as constituting a vaccine injury. That is the express holding of the Markovich decision. The courts below rather went on a subjective analysis of what the petitioner knew, applying that in a retrospective hindsight time frame. I thought both the Special Master and the Court of Federal Claims relied on testimony from a particular doctor that justified that a particular symptom that your client suffered shortly after the vaccination was indeed a standard recognized symptom of MS in Borland's dictionary. And that she additionally suffered other symptoms in the months thereafter that Dr. Meyer, the neurologist who was a specialist in MS, that testified at hearing. I think more specifically, his testimony was, he was asked specifically in hindsight, in retrospect, at what point would the first symptom have occurred, and he stated that that would have been a sign or symptom back in the 1990s. However, it's our position that Just stop with that testimony by the doctor. How do you overcome that? He says there's a condition, a symptom. At the time that the symptom was noted, it was a recognized symptom of MS. Your Honor, I think you need to look at what MS is as a condition. The testimony was also that she did not have multiple sclerosis until late 2003. The diagnosis hadn't been made. And I'm not the Doesn't Markovitch say that's no problem? You don't have to have a diagnosis in order to start the time clock, am I right? That's clear, isn't it? Yeah, Your Honor. We're not relying on when a diagnosis of MS was made. We're relying on when there were the confluence of medical injuries or events that constitute multiple sclerosis. Before 2003 I thought your point was different. I thought your point primarily was that even if there was a symptom of multiple sclerosis at this earlier time frame, 97 to 98, that there wasn't any evidence or theory connecting multiple sclerosis with the administration of this vaccine and that that was what was missing. You didn't know that until 2003, until 2004. That's one of the arguments, Your Honor, but not the sole argument that we were making. It wasn't until 2004 or 2005, depending on how you read the evidence, that there was any recognition by the medical community at large, the test that set forth in Markovitch, that Dr. Klor had sustained a vaccine injury. At best, so we're saying several What's the difference between sustaining a vaccine injury and suffering a symptom of a disease? Your Honor, suffering a symptom of a disease is not something that should trigger the statute of limitations. The testimony was also That's really not my question. My question is what's the difference? I mean, you talk about recognizing a vaccine injury, right? The complication You're talking about a table injury. I could understand what you were talking about because that would be easy. A table injury is defined as a vaccine injury. You're right. Causation and fact, the vaccine isn't defined as a vaccine injury until you win, right? Causation and fact. Right, Your Honor. Which is what you're trying to establish. The problem with the analysis that was done by the lower courts, and I think addresses your concern, is that when she, Dr. Klor, had isolated problems or events in the past, they were nonspecific. They were limited in time and duration. They went away, and at that point would not by themselves have been multiple sclerosis. They could have been, and if you look at the medical records That's the problem, is it not, with this particular terrible disease, is that you can have a symptom at a point in time that when you look back and the person actually is diagnosed, they might say, yep, that was the first symptom. Or, well, the second symptom came then, but what was it? It was muscle soreness or it was a whole series of things that could be related to something else. You're correct, and in fact, in this case, Your Honor, the medical records, when she was seeking treatment earlier on, wondered if she had Lyme's disease, wondered all sorts of things. But I still can't. I would like to find a way to provide the relief you seek, because it's an awful thing to see someone barred by a statute of limitations in a situation where you have a slow onset disease like this, but I have to have a principal legal reason to deviate from the established precedent. It's extremely unfriendly to your cause on equitable tolling, which you know, and so you're looking for a legal analytic tool in which to say, in these situations, the clock only begins to start, not that it's tolled. It only begins to start at some date, and you have to agree that we don't wait for a diagnosis. No, and I'm not focusing on the diagnosis. In the short of diagnosis, after someone has testified that the medical arts understood at the time, in the early date, the first symptom, it was a symptom of MS. Well, they testified in retrospect. Let's do it this way. Let's just assume for the moment that we reject your position about this not being a symptom of MS, as Judge Clevenger is suggesting to you. Let's assume we reject that, and we hold that there was manifestation of a symptom of MS in 97-98, okay? So why do you still win if we make that assumption? I think we win when we look at both the case law and the statute in terms of what constitutes a vaccine injury. In that respect, I think it's instructive to also look at Section 11, which is subject of some of the briefing in this case. Section 11, when you read the statute as a whole, indicates that one does not have a vaccine injury until certain things happen, one of those being that you have the complications or residual disability of a period of six months. You do not have a vaccine injury that can be brought under the vaccine program. It's my position that when you look at Markovich and its language about recognition by the medical community at large, and you take into account... Yeah, but I thought you were also arguing that a vaccine-related injury under the statute requires some symptom of something that could be recognized as a disease or condition that is resulting from the vaccine, and that that wasn't known about this possible connection between the vaccine and MS until much later. That's true, Your Honor. In 2004. I thought that was your argument. That's one of the arguments, Your Honor, and we did have uncontradicted... I don't want to make that argument. Well, I'm trying. I'll do that now. We had uncontradicted evidence, both from Dr. Meyer, the neurologist and an expert in MS, that it would not have been, in his opinion, the medical community at large would not have recognized a vaccine injury in Dr. Klor's situation or the link between MS and the hepatitis B immunization she received until 2005. He's a member of the medical community at large. Dr. Klor... What are you defining as a vaccine injury? The MS. The MS. Prior to that time, in his opinion, she had not sustained... It's a vaccine injury because at some stage in the game, it is determined as a matter of fact that the vaccine caused MS? Because, if I understand, it was at that point that he reviewed the literature, was contacted by myself to address the relationship between MS and hepatitis B. That was in 2005. Did the government argue the opposite? Did they argue the opposite, that the connection was known before 2005? No. There's no evidence brought forth by the government to contradict our position on medical community at large recognition of a vaccine injury. Why isn't that your case? Why do you need to use equitable tolling or Section 11? Why isn't your case right on the face of Section 16? It's not a vaccine-related injury unless and until the medical community finds some linkage between this vaccine and this disease. That is one of my arguments, Your Honor. The evidence is on... Under that theory, it wouldn't matter how many symptoms there were or how continuous or how severe or how pronounced or how unambiguous. Even if it was absolutely clear that she had an MS and hepatitis B vaccine, the three-year statute of limitations wouldn't even begin to run, right? You're right, Your Honor. But I think there's something special about MS, and I think that the evidence is clear in terms of the medical community at large not recognizing a vaccine injury in Dr. Klor until late 2003, 2004. The only contemporaneous medical record that directly addresses this issue is when she went to the doctor, and he indicates when he signs a form in early 2004 that the onset of her injury was 2003, October 2003. And so we're filing based on an MS injury. We're not filing based on an isolated, self-limited symptom that went away, caused no further problems that may have transpired in the 90s. Our vaccine injury is MS. What does it mean to say that their medical injury in 2005 finds a connection between Hep B and MS? Does that mean that the medical profession has decided that Hep B will always give you MS? No, but I think it's enough to put the medical community at large on notice. Could have been? No, I understand. What was this revelation in 2005 that the medical industry, the medical profession as a whole came to? What was the conclusion? The relationship between the Hep B vaccine and MS, what was it that concluded? Well, we haven't gotten to an entitlement phase of this. That's what I'm trying to get at. But there is You're leapfrogging causation, in fact. I just want to find out how high the hurdle or how low the hurdle is you're leaping. Did the medical profession in 2005 conclude that if you get a Hep B vaccination, you're going to get MS? No, I don't think anybody would conclude that, Your Honor, but I think Would they conclude that possibly you could get MS, that maybe you could get something else, some injury could flow from a Hep B vaccination? The medical literature talks about there can be an increased incidence of MS, a causal relationship in some individuals. Not everybody that gets a Hep B immunization, they can have an increased risk of MS. As you know, probably By then, the medical industry had seen enough situations, perhaps like your client, where there had been some symptoms of MS earlier, but no diagnosis, and at that stage in the game in 2005, there are enough of these cases we can now say that in some people, the Hep B might cause MS. Was there any more to it than that in terms of this recognition by the medical community? No, I think what's instructive, Your Honor, though, is that even two members of the medical community at large, that would include my client, Dr. Klor, who is a highly motivated member of the medical community at large, and Dr. Meyer, were not aware of the possible association between Hep B and the development of multiple sclerosis until 2005. They shouldn't be required to bring suit until they know there's some possible connection? Until there's a reasonable basis for doing so, Your Honor. All right. Time has expired. We'll hear from the government, and we'll give you two minutes for rebuttal. Good morning. May it please the Court. My name is Lynn Riccadella, and I represent the Secretary of Health and Human Services in this matter. Your Honor, it's the plain language of Section 1682 of the Vaccine Act and this Court's prior precedent required a dismissal in this case. Clearly, it would seem maybe that the plain language helps the petition in the sense that it talks about a symptom of an injury, a vaccine-related injury, as opposed to some disease. But doesn't the plain language of the statute suggest that you have to know about some connection between the disease and the vaccine? Not at all, Your Honor. Why not? A vaccine is not, excuse me, an injury is not vaccine-related until a special master rules that it is in a given case. The facts of this case, the link between hepatitis B and multiple sclerosis, I disagree. That can't be right. We can't have the running of a statutory limitations period depend on trial testimony. The running has to be triggered by some event in the real world, not something that happens in a courtroom. And that event is the symptom of injury. Well, that's what Judge Dyke was trying to get you to talk about. And he was saying you had a symptom that might relate to a disease, but no way to connect it to the vaccine. Well, as the Supreme Court said in White Cotton, the focus is on evidence of injury. It's not on evidence of vaccine injury. It's on evidence of injury. If you think about it, Your Honors, we have The White Cotton wasn't addressing the issue in this case. But the language was exactly the same, Your Honor. As this Court recognized in Markovich, that when you have two sections of a statute with similar language, you have to treat that language identically. And that's exactly what this Court did in Markovich. And the evidence is on injury. I'll give you an example. The statute ends with Section 16 ends with the word of such injury. First symptom, dot, dot, dot, of such injury. Of such injury, to my reading, refers back to vaccine-related or the following phrase, as a result of the administration of the vaccine. So it seems to me it's not an injury for purposes of this section, unless it's known to be related to the vaccine. Well, then that would preclude a lot of our filings in the vaccine program. A lot of times the first link between a vaccine and injury is made is by a petitioner's expert witness on the stand. So what? Well, then that means that the statute of limitations does not begin to run for that particular claim. Fine. Congress cannot have cracked it out. That's the way the statute is written. The government can't say you can't read the statute the way you're reading it because if you did that, we'd have some people coming in later than three years after the shot. Well, yeah, sure. But so what? Well, that would mean, though, that there are certain classes of petitioners where the statute of limitations doesn't apply at all. Sure it does. It's only a question of when does the three years start to run. Not whether three years can be expanded to nine years, but when does the three-year period begin? What triggers the start of that three-year clock? That's the issue in this case. And you're saying it's any symptom of a disease, and the opposite argument is no, it's the first symptom of a vaccine-related injury. You have to show us there's something wrong with that reading. I just can't imagine that Congress intended a statute of limitations to run after a claim is filed. That just doesn't make practical sense. I mean, for instance, we have 5,000 claims pending in the program right now in the autism omnibus proceeding. I'll submit to you the medical community at large does not find a causal connection between vaccines and autism. But does that mean that those 5,000 claims, that all of them, the statute of limitations does not begin to run? No one is suggesting that trial testimony is going to be dispositive here. The suggestion is you look at what did the medical literature show at the time of symptom, the first symptom. If the medical literature made no connection at all between a disease that that might be a symptom of and the vaccine, then the statute hasn't started yet. If the medical community a year later does more research and comes to the conclusion that the disease to which that first symptom relates might come from the vaccine, then the three-year clock starts then, one year after the shot or two years or whenever the medical community comes to that conclusion. What's wrong with that reading? Because you're treating... For somebody who there is a recognized connection between a vaccine and an injury, the clock begins to run. However, somebody is afforded more time to file. They could file 10, 12 years after their first symptom of injury. What's the matter with that? Congress mandated that the trigger for the three-year statute be when there's a vaccine-related injury. Until the relationship is established, the clock shouldn't run. But, Your Honor, the problem is I'd say 90% of our cases, the relationship is never established. This court said in all of them that petitioners are not required to show objective... I don't think that's the suggestion. The suggestion is that there's some evidence in the medical community to suspect the link between the two. I mean, you certainly... The usual rule in the statute of limitations is the statute of limitations doesn't start to run until you can bring suit. Now, somebody in 1997 had brought suit saying, uh, I have MS. It's caused by the vaccine. I don't see how that person could satisfy Rule 11 standards. There wouldn't be any basis for believing that there was a connection between the MS and the vaccine. So you have to... You can't bring suit until you have some evidence or some reason to believe that there's a connection. So how can the statute of limitations begin to run until that essential connection exists? I just submit because a lot of these cases, that connection is actually never made until petitioner... But it must exist when they brought suit. They can't bring a speculative suit. They have to know... They have to have evidence of a connection when they bring the suit. They may not put the witness on the stand until later, but there has to be some evidence. You know, some evidence that there is a causal connection. But what is that evidence? Your Honor, I'm submitting to you, in a lot of our cases, that evidence is missing. The first time that evidence is brought forward is when they file an expert report. The argument she makes has nothing to do with what an individual witness in a case thinks or says. The argument Ms. Bush is making is, you look to what the medical community as a whole thought, and if in year one they don't see any connection, but in year five they see a connection because of further research, then the three-year clock runs beginning in year five. Let's take the facts of this case. I dispute that, first of all, Dr. Mayer never drew a causal connection between hepatitis B vaccine and appellant's multiple sclerosis. It never got to an entitlement case, and he never made such an opinion. Petitioner relies solely on a 2004 article in France that has since been discredited. The Institute of Medicine draws no causal connection between hepatitis B vaccine and multiple sclerosis. Then maybe the statute still hasn't started to run. I cannot believe that Congress intended to craft out an exception or a classic claim that it doesn't apply at all. Can you believe that Congress intended to have a statute of limitations which would require a person injured to predict what the medical community five or ten years later might conclude? How could that possibly be what Congress expected injured people to do? Well, then why have a statute of limitations at all, Your Honor? I mean, if the door is going to be open... With all due respect, that's a fairly foolish argument. I mean, the short of the matter is we have a difficult problem here of trying to figure out what a vaccine-related injury is. It's in the statute. And I haven't heard you to address the concerns of my colleagues or of Ms. Bush, who is trying to define a vaccine-related injury as an injury where some medical profession pursuant to our case law has drawn a connection between the vaccine and the particular medical... MS, for example. I understand. And, Your Honor, this court... As I understand it, the record in this case shows that that connection between the hep B vaccine and MS was not made until 2003, 4, 5, something like that. In one article in France. No, I'm just saying, well, I didn't understand you to be contesting that fact-finding. I thought the case was being pitched to us here as though the record in front of us shows that there is evidence in the record to show that the medical profession hasn't made what Ms. Bush would want to be, the connection... That's correct. ...until 2005, whatever, and if the statute began to run then, maybe she would be timely, okay? So I think the burden on you, and I think you should catch it if you haven't from the questioning from the bench, is you're going to have to tell us why a vaccine-related injury has a meaning different from the meaning that Ms. Bush proffered and that the panel has questioned. I just... A vaccine-related injury, Your Honor, is when the court, when the special master finds that the vaccine caused a particular petitioner's injury. Wait, wait, wait. On that theory, so after there has been a causation, in fact, judgment entered, you have a vaccine-related injury, right? That's correct. The statute says your cause of action begins to run, right? You have 36 months after the occurrence of the vaccine-related injury. That's correct. So on your theory, you've got 36 months after you've lost to bring a case. Well, Your Honor... Isn't that what you just said? I don't believe so. Are you listening to what's happening in the oral argument? Yes, sir. Congress... Well, then, if you take that argument to its... I appreciate your concern that there are going to be a number of cases that you never contemplated. It might be timely if, for heaven forbid, from your point of view, the court said a vaccine-related injury has the meaning Ms. Bush asserted. But, Your Honor, petitioners are only allowed to file a claim for a vaccine-related injury. So, technically, they'd be prohibited from filing a claim in the first place. That's why it is preposterous for you to suggest that the word vaccine-related injury means a judgment by the special master sustained by the court below and by us saying there is causation in fact that Hep B vaccine caused the MS. But, Your Honor, if they haven't suffered a vaccine-related injury, they can't even get into court. Under the Act, the Act says that you have to have suffered a vaccine-related injury. In order to file a petition for compensation that doesn't get you in trouble for fraud, you have to say, I have suffered a vaccine-related injury. Correct. Well, if you're saying that the only person that can ever assert that is someone who knows that a causation in fact has occurred between the vaccine and your particular injury, then you're almost limiting this to table injuries. No, sir. No, Your Honor. I mean, you're asserting that you suffered a vaccine-related injury, but then you have to prove it. How could somebody bring a suit for a vaccine-related injury, make a claim for a vaccine-related injury, before there is at least some reason to suspect a connection? You would ask that that person be sanctioned, wouldn't you? No, because we see it all the time, Your Honor. She had filed shortly after the first incident that happened to her, I can't pronounce the name of the syndrome. The Laramite's Phenomenon. And she'd gone to a doctor, and the doctor said, well, you've suffered this particular syndrome, and it's my duty to tell you that is a symptom of MS. And she said, well, I have perfectly good health, I've got nothing else wrong with me, it must have been the vaccine. So she filed. Aren't you going to move to dismiss? I don't know that we can move to dismiss. What's the theory? They say, well, what's your theory, Ms. Bush? And she said, I was perfectly healthy. It has to be. That won't fly, right? Yes, that's correct. We would challenge that based on probably a reasonable basis for bringing the claim, that's correct. But isn't that the end conclusion of your position in this case? That she had 36 months from the recognition of that first symptom? Yes, that she had to have filed her claim by the year 2000, and she filed it eight years beyond. And let's assume nothing else had happened to her. Sometimes in a disease like this, you can go three years before the next symptom occurs. Correct, although in this case, she knew she had a neurological injury. Don't interrupt the question. Wait until the question is over before you start the answer, please. I apologize. In this case, she knew within the 36 months that she had suffered a neurological injury. I believe her that she didn't know that there was a potential connection between the hepatitis B vaccine and her neurological injury. I just get back to this court's language in Bryce where you say the statute of limitations begins to run even if the petitioner reasonably would not have known at the time that the vaccine had caused an injury. Where's the inconsistency between that language you just quoted and the theory that Ms. Bush is arguing? I mean, this she's saying that it's up to what the medical community at large has to Yes, that's exactly what she's saying and that seems to be what the Markovich case holds. Then how do you define medical community at large in this case? Is the medical community at large that one French study? When you have the entire Institute of Medicine not drawing a causal connection? Her own expert witness didn't even know about a causal connection until we approached by Her French study may not be adequate to prove her case, but you have agreed that before the French study no one had suggested a connection. And if no one had suggested a connection, there was no reason to believe that there was a connection. I don't see how soup could have been brought and I don't see how if the soup couldn't have been brought if the statute of limitations starts to run. That's your problem. This court also said in Markovich, Your Honor, that Congress intended the limitations period to run prior to the time the petitioner has actual knowledge that a vaccine recipient suffered from an injury that could result in a viable cause Sure, because in that case the distinction was between what the medical community thought and what the individual patient thought. And we all agree that we don't just look at the subjective understanding of the patient. But Ms. Bush is not arguing anything about the subjective understanding of a patient in a case such as this. She's referring to what the medical community as a whole has concluded. In the Markovich case, the medical community at large in that case didn't. Her expert had drawn a causal connection between the vaccine and the eye fluttering. But that was not the basis of this court's holding in Markovich. The basis of this court's holding in Markovich was that the eye fluttering was a symptom of injury. Whether or not it was a vaccine injury was not before this court in Markovich. This court said it's the evidence of injury. Well, that's because in that context everybody knows that the seizures presaged by the rapid eye blinking result from the shot. No, Your Honor. The government never conceded that point. Absolutely not. It never got to entitlement in the Markovich case. That was an issue that was very open to debate. And we did not concede that issue. But I thought the medical community recognized the connection between seizures and the vaccine. DTAP and seizures? No, sir. Really? Yes, sir. Well, Markovich concludes in the final paragraph with the following sentence. Quote, For all of the reasons discussed above comma we hold that quote the first symptom or manifestation of onset for purposes of section 16 that's of course the statute of limitations section and continuing the quote is the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large period end quote. Now why doesn't that sentence sink your case? Because I just go back to what the facts were before this court in Markovich. Whether or not the injury was a vaccine injury was not before this court in Markovich. So you're saying that when the court says we hold, it's really not what they held? Not at all, your honor. Absolutely not. Well then what are you saying? How do you disown this sentence? It couldn't be clearer. We hold. Because I argued this Markovich, I know you were on the panel Judge Michelle, and the whole focus of that case was what was the first symptom of injury, not the first symptom of a vaccine injury. What was the first sign that something aberrant was going on in the child? So then you have to implicitly being argued that the sentence I just read from is actually rank dicta that has zero precedential effect and therefore this panel can and should ignore it. I know I'm beyond my time, your honor. Absolutely not. That language was coming from the statute and I'm saying you have to look at the statute as a whole. And a vaccine injury is not considered a vaccine related injury. You have to help me with this sentence. I mean, it's either the holding or it isn't the holding. If it isn't the holding we usually call that dicta. If it's not the holding, you have to explain to me why it's not the holding and why the court called it the holding. That is the holding of the case, your honor. Well then why aren't we as a subsequent panel bound by that holding? And therefore we must look to the views of the medical community as a whole, which is precisely what Mrs. Bush is asking us to do. Absolutely. And I just submit that there is no evidence that the medical community as a whole would consider a vaccine related injury. That was not, there was no evidence in this case. She put on no evidence to that effect. All she had was a 2004 French article. We never got to entitlement. That's putting the cart before the horse, your honor. I mean, are we supposed to have evidence? The logic of that is the statute still hasn't started to run because one aberrant article in isolation can't represent the view of the medical  three-year clock still hasn't started to run under your view of the evidence. Oh no, I mean under our view of the evidence, it starts at the first symptom of injury, regardless if it's considered associated with a vaccine or not. It's first for symptom or manifestation of onset of an alleged vaccine related injury. That is the government's view. And I, unless the court has any other questions, I realize I'm five minutes over my time. All right, thank you. Rebuttal? Mrs. Bush? Your honors, I think it's also important to take into account what the purpose and intent of the Vaccine Act was when construed. Don't start all over again. This isn't principal argument. We already had that and gave you extra time.    And I think it's important to take into account what the purpose and intent of the vaccine was. And if you haven't previously covered that you feel you want to cover in light of what opposing counsel has just said, that's the limit. Okay, yes, your honor. There was inquiry of opposing counsel about medical community at large and what the evidence was in our expert's testimony. I would refer the panel to appendix page A153 which is part of the briefing that was done in the case that cites Dr. Myers' sworn testimony and he says quote, I have a special interest in the relation between viruses and MS and was not aware of how controversial this issue is regarding the relation between hep B vaccinations and MS. Why do you need any help on this? She's conceded that no one in the medical community, not even an individual, much less the community as a whole, made any connection in 97, 98, 99, 2000, etc. And she says even in 2004 the one French article isn't worth the paper it's written on. She's conceded that the medical community didn't make any linkage. That's all you need for your case. Well, if that's all I need. I was just going to address though, your honor, that I think there is an implication that there was no evidence that the courts below looked at as to what constituted recognition by the medical community at large and I did want to indicate that yes, the only side that came forward with what recognition there was by the medical community at large was the petitioner. All right. We thank both counsel. The appeal is submitted.